CHARLES SARRIS *vs.* JOHN COULES & others.

Suffolk.   January 17, 1929. — May 29, 1929.

Present: RUGG, C.J., CROSBY, CARROLL, & SANDERSON, JJ.

*Partnership*, Accounting.  *Equity Jurisdiction*, Accounting.  *Contract*, Construction.  *Interest*.  *Equity Pleading and Practice*, Decree.

Partners engaged in operating a restaurant under an oral agreement hired a building under a lease in writing which provided for a term of fifteen years ending in 1936 and for its termination at the election of the lessor if the premises were taken by eminent domain.   Thereafter they hired an additional building under a lease in writing for a term of ten years ending in 1932.   In 1923 they executed a partnership agreement in writing which provided that the partnership should "continue for the term equal to the . . . [first] lease . . . , which expires . . . [in] 1936"; and that, if any partner desired to withdraw from the partnership during its term, his interest should be determined upon the basis of the then value of the cash and tangible assets of the partnership, expressly excluding the value of the leases.   At about that time a new partner was admitted on equal terms with the others, and a second agreement in writing was executed, which recited that the original partners "became partners . . . for a term of years ending . . . [in] 1936"; and provided that the new partner should pay $3,000 down in cash and $3,000 more out of his share of the profits, and that it was subject to the terms of the first agreement.   The new partner then knew the dates when both leases expired and thereafter spent most of his time working in the building hired under the second lease.   In September, 1926, the partnership was obliged to close the building hired under the first lease by reason of proceedings by eminent domain, in which the partnership received damages for injury to its leasehold.   In October, 1926, the new partner withdrew from the partnership and thereafter commenced a suit in equity against the other partners for an accounting as to the value of his interest.   A judge who heard the suit upon reports by a master sustained an exception by the plaintiff to his being charged interest on the $3,000 which he had agreed to pay to the defendants out of his profits, and ruled that the plaintiff was entitled to have the amount received in the eminent domain proceedings included in the accounting, but that the value of the second lease should have been excluded therefrom; and ordered the entry of a final decree directing the payment of a certain sum by the defendants to the plaintiff in accordance with his rulings.   The plaintiff appealed.  *Held*, that

(1) The defendants were not entitled to interest on the $3,000 which the plaintiff agreed to pay out of his profits;

(2) The premises included in the first lease having been taken by eminent domain previous to the plaintiff's withdrawal from the partnership and a sum of money received by it therefor, that money was an asset in which the plaintiff was entitled to share upon his subsequent withdrawal: the provision in the partnership agreement as to the exclusion of the value of the leases in the accounting had no application to that money;

(3) There was no merit in a contention by the plaintiff that the partnership terminated at the time of the eminent domain proceedings; and the plaintiff continued to be a partner until he withdrew from the partnership;

(4) By reason of the terms of the partnership agreement, the value of the second lease could not properly have been included in the accounting.

BILL IN EQUITY, filed in the Superior Court on November 3, 1926, for an accounting between partners.

The suit was referred to a master, who found that, when the plaintiff signed the agreement dated December 1, 1923, described in the opinion, he knew that the Dock Square lease was for a term of years ending September 30, 1936, and the Huntington Avenue lease for a term of years ending August 4, 1932; that he spent practically all his time in the Huntington Avenue restaurant while working for the partnership; and that "No contention was then [at the time the plaintiff withdrew from the partnership] made that under the terms of the partnership agreement, the plaintiff was not entitled to his one-sixth share of the amount received by way of damages for the loss of the Dock Square lease and of the value of the Huntington Avenue lease."

The agreement dated December 1, 1923, recited that the defendants, under the agreement dated December 1, 1921, "became partners . . . for a term of years ending September 30, 1936." The agreement dated December 1, 1921, recited that the defendants were engaged in business both at Dock Square and Huntington Avenue; and provided, "said partnership to continue for the term equal to the present lease upon the premises 30 Dock Square, which expires September 30, 1936."

Other material facts found by the master in his original and supplemental reports are stated in the opinion.

The first exception by the plaintiff to the master's report

is stated in the opinion. His second exception is based on the following objection: "Because the master finds that there is interest chargeable . . . on the . . . $3,000 due from the plaintiff to the defendants for the balance payable by the plaintiff for his share in the copartnership." The defendants filed no objections to the report.

The suit was heard upon the master's reports by *Cox*, J., who made the rulings described in the opinion and ordered the entry of an interlocutory decree confirming the master's report as modified by his rulings and a final decree directing the defendants to pay to the plaintiff the sum of $940.75, with interest from October 16, 1926. The plaintiff appealed from the final decree only.

The case was submitted on briefs.

*E. C. Jacobs, E. J. Coughlin, & G. J. Tauro,* for the plaintiff.

*D. Mancovitz,* for the defendants.

CROSBY, J. This is a suit in equity between partners for the appointment of a receiver and for an accounting. The evidence is not reported. The master heard the parties and made a report to which the plaintiff filed two objections; the trial judge overruled the first and sustained the second. He found for the plaintiff in the sum of $940.75 with interest from October 16, 1926, to January 1, 1928, amounting to $61.20. A final decree for $940.75 with interest to April 6, 1928, was entered in his favor, with costs in the sum of $22.25. From that decree the plaintiff appealed.

The master's findings, so far as material, shortly stated are as follows: All the defendants, except Papagelis, some time before December 1, 1921, entered into a partnership under the firm name of "Excellent Lunch" for the purpose of carrying on the lunch business. They took a lease of a store at No. 30 Dock Square, Boston, for the conduct of the business, and shortly thereafter the defendant Papagelis became a partner. The lease was for a term of fifteen years, expiring September 30, 1936. It contained a provision that it could be terminated by the lessor at his election if, among other things, the premises in whole or in part were taken by eminent domain for highway or other purposes. The original

partnership agreement between at first the four partners, and later between the five partners, was oral and was afterwards embodied in a written agreement dated December 1, 1921 (a copy of which is attached to the bill), but which was not executed until December, 1923. The oral agreement provided that all five partners had equal interests "and that the term of the partnership should continue for the duration of the lease on the Dock Square location." On November 20, 1923, the five partners acquired another location for their business at No. 305 Huntington Avenue. Later, the plaintiff became an equal partner and all six partners signed an agreement dated December 1, 1923 (a copy of which is annexed to the bill), the plaintiff paying $3,000 in cash and agreeing to pay $3,000 more out of his share of the profits. This agreement provided that it was made subject to the terms and conditions of the earlier agreement between the five partners, who are the defendants. This earlier agreement was not shown to the plaintiff nor did he ask to see it. It contained among other provisions the following: ". . . that in the event that any one of the said parties, shall desire to withdraw from said partnership during the time hereinbefore mentioned, he shall offer his interest for sale to the remaining partners and the value of the share of the partner desiring to retire shall be fixed upon the value of cash on hand or in bank, value of merchandise owned by the partnership, and the value of the fixtures in the various places of business of the partnership, it being expressly understood that the value of the leases are not to be considered in determining the value of the retiring partner's interest." The master specifically found that the defendants made no attempt to conceal from the plaintiff any information as to the contents of this earlier agreement and had no intention to defraud the plaintiff; and that the plaintiff knew when he signed the agreement of December 1, 1923, the dates when the Dock Square and Huntington Avenue leases expired. In the latter part of 1925 the premises in Dock Square, or portions of it, where the restaurant of the partnership was located were taken by the city by eminent domain for the widening of the square, and on September 16, 1926, the partnership was obliged to

close that restaurant. On October 16, 1926, the plaintiff gave up working for the firm and notified the defendants that he wanted the amount of his interest in the partnership paid over to him. The Dock Square lease had been terminated some months before this date and damages were received by the firm on account of injury to the leasehold amounting to $8,250. The master, in stating the account between the parties upon the basis that the plaintiff was entitled to have included in the accounting the value of both leases, found that there was due the plaintiff, together with interest, the sum of $3,360.41. He made an alternative finding, upon the basis that the plaintiff was not entitled to recover on account of either lease, that he was indebted to the defendants in the sum of $795.52, which included interest.

The trial judge overruled the first exception, which was to the master's finding that the defendants made no attempt to conceal from the plaintiff any information as to the contents of the earlier agreement between the parties, and had no intention to defraud the plaintiff. There was no error of law in overruling this exception. In the absence of a report of the evidence we cannot say that the master's finding was not fully justified.

The second exception was rightly sustained, as it does not appear that the defendants were entitled to receive interest on the deferred payment of $3,000 which the plaintiff was to pay out of the profits of the business.

The judge found and ruled that the plaintiff was entitled to have the $8,250, the amount received as damages to the leasehold at Dock Square, included in determining the amount due the plaintiff. When the latter withdrew from the partnership the Dock Square lease had been terminated and the restaurant at that location closed. In other words, the premises having been taken by eminent domain before the plaintiff had retired as a partner, the provision in the earlier agreement, that upon the withdrawal of a partner from the firm the value of the leases was not to be considered in determining the value of the retiring partner's interest, is not applicable, and the amount received as damages for

the destruction of the leasehold is an asset in which the plaintiff was entitled to share.

As to the value of the Huntington Avenue lease, the judge found and ruled that the plaintiff was not entitled to have that considered in the accounting. We are of opinion that the plaintiff is precluded from any participation in the value of that lease by reason of the express terms of the earlier agreement between the five partners, and under which the rights of the plaintiff are expressly limited. The plaintiff contends that the partnership came to an end upon the termination of the Dock Square lease when the premises were taken by eminent domain. He bases this contention upon the finding of the master in his supplemental report that what he meant by the statement in his original report, "that the term of the partnership should continue for the duration of the lease on the Dock Square location," was that the defendants orally agreed to remain partners while the lease was in legal force and effect, and that this might be until September 30, 1936, or it might end at any time upon the legal termination of the lease. The master expressly states that "this finding relates wholly to the original oral agreement between the five defendants." That oral agreement, as previously stated, was followed by the written agreement of the defendants dated December 1, 1921. It is plain that the plaintiff remained a partner after the store was closed in Dock Square and worked in the Huntington Avenue restaurant until October 16, 1926, when he withdrew from the firm and notified the defendants that he wanted what was due him from the partnership. In view of the facts reported by the master, the exclusion by the trial judge of the value of the Huntington Avenue lease was warranted.

The decree gives the plaintiff all to which he is entitled.

*Decree affirmed with costs.*